# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON GUSTAVO MEDINA ARDILA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, ET AL.,<br><br>Respondents. | Case No. 5:26-cv-01761-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.
## INTRODUCTION

On April 10, 2026, Petitioner Nelson Gustavo Medina Ardila ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention at the Adelanto Detention Facility. (Dkt. 1 at 2.) Also on April 10, 2026, Petitioner filed a Petition for Temporary Restraining Order. (Dkt. 2.) On April 17, 2026, Respondents Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Rodney S. Scott, Commissioner of U.S. Customs and Border Protection ("CBP"), Jaime Rios, Acting Field Office Director for the Los Angeles

Office of Immigration and Customs Enforcement ("ICE"), and Eddy Wang, Special Agent in Charge of the Los Angeles Office of Homeland Security Investigations (HSI") (collectively, "Respondents") filed an Answer to Petition (the "Answer"). (Dkt. 11.)  The Answer advises that "Respondents are not presenting an opposition argument at this time." (Id. at 2.)  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 3, 7.)  For the reasons set for the below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody without conditions.

## II.

### SUMMARY OF FACTS AND PETITIONER'S CLAIMS

The facts set forth below come from the Petition that was verified by Petitioner's counsel, (Dkt. 1 at 12), as well as Petitioner's declaration.  (Dkt. 2-1 at 3.)  Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so.  (Dkt. 9.)  Accordingly, the Court considers these facts to be undisputed and conceded.  See C.D. Cal. L.R. 7-12.

Petitioner is a citizen and national of Colombia.  (Dkt. 2-1 at 3.)  Petitioner first entered the United States in 2022 alongside his child and girlfriend.  (Id.) Petitioner's girlfriend is the mother of his child.  (Id.)  Petitioner was originally appearing for Immigration Court hearings, but those hearings were terminated.  (Id.) Petitioner then applied for asylum directly with U.S. Citizenship and Immigration Services ("USCIS").  (Id.)  On April 9, 2026, Petitioner went to an interview for this application in Tustin, California and was detained at the interview.  (Id.)  Petitioner is now separated from his family and has limited access to them.  (Id.)  Petitioner is very afraid about what his girlfriend will do now that she does not have Petitioner's emotional and financial support.  (Id.)  Petitioner is afraid that his girlfriend will be unable to provide for herself and their child.  (Id.)  This gives Petitioner tremendous anxiety and depression.  (Id.)

2

Prior to being detained by immigration authorities, Petitioner was a resident of Compton, California.  (Dkt. 1 at 7.)  Since being detained, Petitioner has been held virtually incommunicado.  (Id. at 2.)  Petitioner was denied contact with the outside world for the first two days of his incarceration, including from family and counsel, and since then has been permitted only one fifteen-minute phone call with his attorney.  (Id.)  Petitioner has been unable to seek a bond hearing since his detention.  (Id.)  Petitioner seeks immediate release from custody or an individualized bond hearing before a neutral Immigration Judge within seven days at which the Government bears the burden of proof by clear and convincing evidence.  (Id. at 11.)

## III.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."

Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful

description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## IV.

## ANALYSIS

It is undisputed that Petitioner entered the United States in 2022 and had been permitted by immigration authorities to remain out of custody until his detention on April 9, 2026. (Dkt. 2-1 at 3; Dkt. 1 at 7.) It is also undisputed that Petitioner has a pending asylum application was detained by ICE at his asylum interview without being provided notice or a pre-deprivation hearing. (Dkt. 2-1 at 3; Dkt. 1 at 7.) Based on the foregoing undisputed facts, the Court concludes that Petitioner's arrest by ICE at his asylum interview without being provided notice or a pre-deprivation hearing violated the Immigration and Nationality Act ("INA"), as well as the Administrative Procedure Act ("APA"). See, e.g., You, Xiu Qing v. Nielsen, 321 F. Supp. 3d 451, 466 (S.D.N.Y. 2018) ("Petitioner has demonstrated that his arrest at USCIS's offices and his detention pursuant to that arrest likely violated the INA."); De Jesus Martinez v. Nielsen, 341 F. Supp. 3d 400, 410 (D.N.J. 2018) ("Respondent-Defendants' attempt to deport Mr. Martinez by arresting him during his I-130 interview constitutes a disregard for the rights that they, on behalf of DHS, created."); Wanrong Lin v. Nielsen, 377 F. Supp. 3d 556, 564 (D. Md. 2019) ("[T]he Court holds that Plaintiff is likely to succeed on his claim that the arrest and attempt to remove him at the conclusion of his interview violated the Administrative Procedure Act."); Franco v. Meyer, 2025 WL 3280782, at *2 (E.D. Cal. Nov. 25,

2025) ("[T]he court concludes that petitioner has demonstrated a likelihood of success on the merits of his claim that arresting him at his adjustment of status interview violates the INA."); Sanchez v. McAleenan, 2024 WL 1256264, at *7 (D. Md. Mar. 25, 2024) ("The Court finds that by using the provisional waiver process to lure non-citizen spouses of U.S. citizens to Customs and Immigration Services facilities only to then arrest, detain, and eventually remove the applicants, Defendants have acted arbitrarily and nullified their own regulations in violation of Due Process, the APA, and the INA itself.").

The Court further concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the life he built in the United States his girlfriend and child since 2022.  See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).  Therefore, the Court concludes that Petitioner's arrest by ICE without notice or a pre-deprivation hearing violated Petitioner's procedural due process rights.  See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted));

Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given the violations of the INA, APA, and Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release on his own recognizance. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight

risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Finally, the Court notes that "Respondents are not presenting an opposition argument at this time." (Dkt. 9 at 2.) The Court appreciates Respondents' assistance with the expeditious resolution of this case.

## V.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner from custody without conditions.[1] Respondents shall also immediately return any confiscated property and documents to Petitioner upon his release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the

---

[1] There is no evidence in the record that Petitioner has any criminal history or that he was previously subject to any condition of release or supervision. Moreover, it is undisputed that Petitioner was appearing for Immigration Court hearings until those hearings were terminated. (Dkt. 2-1 at 3.)

8

Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance within twenty-four hours of the entry of Judgment.

IT IS SO ORDERED.

DATED:   April 20, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

9